# SUPREME JUDICIAL COURT

#### FOR THE

## COUNTY OF NORFOLK, OCTOBER TERM 1837, AT DEDHAM.

PRESENT:

Hon. LEMUEL SHAW, Chief Justice,
Hon. SAMUEL PUTNAM,
Hon. SAMUEL S. WILDE, } Justices.
Hon. MARCUS MORTON,
Hon. CHARLES A. DEWEY,

---

## Rufus Thayer et al. versus The City of Boston.

An action sounding in tort may be maintained against a municipal corporation.

A municipal corporation may be liable in an action of the case, for an act which would warrant a like action against an individual, provided that such act is done by the authority of the corporation, or of a branch of its government invested with jurisdiction to act for the corporation upon the subject to which the particular act relates, or that after the act has been done, it has been ratified by the corporation by any similar act of its officers.

As a general rule, a municipal corporation is not responsible for the unauthorized and unlawful acts of its officers, though done *colore officii*; it must further appear, that the officers were expressly authorized to do the acts, by the corporation, or that they were done *bonâ fide* in pursuance of a general authority to act for the corporation, on the subject to which they relate, or that, in either case, they were adopted and ratified by the corporation.

THIS action was argued in connexion with the case of *Stetson* v. *Faxon, ante,* p. 147. It was an action on the case, brought by Rufus Thayer and Amasa Stetson.

The declaration contained two counts. The first sets forth,

that the plaintiffs are seised in fee, as tenants in common, of a messuage in Boston, bounded southerly on Market square or North Market street, and along and over and by the southerly front of the messuage there long has been, and of right ought now to be, a free and open paved space, public street or passage way to and from the messuage, extending from the westerly end of Dock square along the range of buildings standing in line with the messuage, and running eastwardly to the street called Roebuck alley, which way the plaintiffs, by reason of their seisin and ownership of the messuage, had a right to enjoy ; that the defendants, on the 1st of September, 1825, took up the pavement in front of the messuage and range of buildings, and dug up the soil, &c. and erected stalls, benches, &c. on the passage way, and obstructed the communication with the messuage, &c. *per quod &c.*

The second count avers that the defendants erected and caused to be erected certain fences, buildings and obstructions in and upon that part of the passage way lying easterly of the messuage and of an alley running by the easterly side of another messuage belonging to Stetson, adjoining the messuage described in the declaration, by means of which this messuage has been obscured and darkened, and access to it obstructed, &c. and also deposited large quantities of earth, bricks, stones, &c. *per quod &c.*

The defendants pleaded the general issue.

It appeared at the trial, that the removal of the pavement &c. and the depositing of the earth, &c. in front of the plaintiffs' messuage, were acts done by officers of the city, having authority over streets and public lands, and claiming to act by authority of their office, and that the persons employed were paid from the city treasury ; and that the erection of the stalls, booths, &c. and the occupation of the land in front of the plaintiffs' messuage, were by persons under permission from officers of the city, claiming authority as such ; and that the city received rent therefor, claiming title to the *locus* in fee.

The defendants objected that this action could not be maintained against them for any of the acts alleged to have been done in the public street in question, because they were performed, not by the city, but by the surveyors of highways and

other officers duly authorized by law ; and if the officers were not so authorized, they, and not the city, were responsible for their unlawful acts ; that the corporation could not be made answerable for any unauthorized trespasses of its officers, and that in fact it was incapable of committing a trespass.   But for the purposes of the trial it was ruled, that the defendants were responsible for the acts of the officers of the city.

The jury rendered a verdict in favor of the plaintiffs, in which, by the consent of the parties, the damages were apportioned among the several causes of complaint.

If for any one or more of the causes of action set forth this suit could be maintained against the defendants, judgment was to be entered for the plaintiffs for such sum as the jury assessed for such cause or causes of action ; but if the city was not responsible for any of them, the plaintiffs were to be nonsuited.

*J. Pickering* and *C. P. Curtis*, for the defendants, cited *Riddle* v. *Locks and Canals &c.*, 7 Mass. R. 169 ; *Russell* v. *The Men of Devon*, 2 T. R. 667 ; *Mower* v. *Leicester*, 9 Mass. R. 247 ; *Baker* v. *Boston*, 12 Pick. 184, and the New York cases there cited.

*March 5th,
1836, at
Boston*

*Metcalf* and *C. G. Loring*, for the plaintiffs, cited *Lynn* v. *Turner*, Cowp. 86 ;  *The King* v. *Bank of England*, 2 Doug. 524 ; *Sutton* v. *Bank of England*, Ryan & Moody, 52 ; 3 Dane's Abr. c. 74, art. 9 ; *Chestnut Hill Turnpike Co.* v. *Rutter*, 4 Serg. & Rawle, 6 ; *Smith* v. *Birmingham &c. Gas Light Co.*, 1 Adolph. & Ellis, 526 ; *Yarborough* v. *Bank of England*, 16 East, 6 ; *Clark* v. *Washington*, 12 Wheat. 40 ; 4 Amer. Jurist, 303.

SHAW C. J. delivered the opinion of the Court.   This case, by consent, has been argued in connexion with the case of *Stetson* v. *Faxon* pending in Suffolk, and involves many of the same facts, which were presented in that case, and depends, to some extent, upon the same principles.

*June 26th,
1837, at
Boston.*

· The passage way lying in front of the plaintiffs' estates and constituting part of what was formerly denominated Dock square, is variously described, in different counts in the declaration, as a passage way appurtenant to these estates, and as a public highway.   We are apprehensive that some confusion has

been thrown upon the case, by treating this right of way as a private right, enjoyed by the plaintiffs in consequence of being seised of adjoining estates, instead of regarding the way as a public highway. It appears that it has been used by all the citizens of the Commonwealth, to pass with their horses, carriages and teams for all purposes, for a period of more than forty years, from a time beyond legal memory, and this proves it to be a highway. Many of the most important highways stand upon this basis and no other ; and it would greatly endanger the public interests if a doubt could be raised whether the public have an easement in such highways, for the same purposes, and to the same extent, as in those which are proved by the records of the courts, by whom, in the legitimate exercise of their authority, they have been established. Indeed the law proceeds upon the presumption, that at a period anterior to legal memory, these highways were legally laid out, of which the evidence has been lost. It is doubted whether any other title for the public could be found to the use of the most frequented streets of the city.

The action is an action of the case against the city in its corporate capacity, for special damage, alleged to have been done to the plaintiffs, in their estates, by the officers of the city, having authority over the streets and highways of the city, by acts which they professed to do by virtue of their offices, and for the use and benefit of the city.

It is a well settled rule of law, that if an individual suffer special damage, by any unlawful act, in obstructing a highway, he shall have his action although the party doing the act is liable to an indictment. But without such damage, although the act is unlawful, and although more injurious to one proprietor on ac count of his proximity to the highway than another, still he cannot have an action, because actions would thereby be multiplied indefinitely ; but the offender shall be prosecuted by indictment, by which the offence shall be punished, and the wrong redressed once for all. What is special damage to sustain the *per quod* and enable one to have his several action, for an injury common to the whole community, is often a difficult question. It seems to be settled by authorities, that it must be something not merely differing in degree, but in kind, from that

which must be deemed common to all. But as this subject has been fully considered in the other case alluded to, it is not necessary in this, to discuss it more at large.

Supposing this to be a public highway, and the plaintiffs to have sustained a special damage, so as to enable them, upon general principles, to maintain an action, then it is argued that such an action, sounding in tort, cannot be maintained against the city, in its corporate capacity ; and whether such action can be maintained, is the question which has been mainly considered in the present case.

The argument strongly pressed by the defendants is, that if the officers of the corporation, within their respective spheres, act lawfully and within the scope of their authority, their acts must be deemed justifiable, and nobody is liable for damages, and if any individual sustains loss by the exercise of such lawful authority, it is *damnum absque injuriâ.* But if they do not act within the scope of their authority, they act in a manner which the corporation have not authorized, and in that case the officers are personally responsible for such unlawful and unauthorized acts.

But the Court are of opinion that this argument, if pressed to all its consequences, and made the foundation of an inflexible practical rule, would often lead to very unjust results.

There is a large class of cases, in which the rights of both the public and of individuals may be deeply involved, in which it cannot be known at the time the act is done, whether it is lawful or not. The event of a legal inquiry, in a court of justice, may show that it was unlawful. Still, if it was not known and understood to be unlawful at the time, if it was an act done by the officers having competent authority, either by express vote of the city government, or by the nature of the duties and functions with which they are charged, by their offices, to act upon the general subject matter, and especially if the act was done with an honest view to obtain for the public some lawful benefit or advantage, reason and justice obviously require that the city, in its corporate capacity, should be liable to make good the damage sustained by an individual, in consequence of the acts thus done. It would be equally injurious to the individual sustaining damage, and to the agents and per-

sons employed by the city government, to leave the party injured no means of redress, except against agents employed, and by what at the time appeared to be competent authority, to do the acts complained of, but which are proved to be unauthorized by law. And it may be added, that it would be injurious to the city itself, in its corporate capacity, by paralyzing the energies of those charged with the duty of taking care of its most important rights, inasmuch as all agents, officers and subordinate persons, might well refuse to act under the directions of its government in all cases, where the act should be merely complained of, and resisted by any individual as unlawful, on whatever weak pretence ; and conformably to the principle relied on, no obligation of indemnity could avail them.

The Court are therefore of opinion, that the city of Boston may be liable in an action of the case, where acts are done by its authority which would warrant a like action against an individual, provided such act is done by the authority and order of the city government, or of those branches of the city government, invested with jurisdiction to act for the corporation, upon the subject to which the particular act relates, or where after the act has been done, it has been ratified, by the corporation, by any similar act of its officers.

That an action sounding in tort, will lie against a corporation, though formerly doubted, seems now too well settled to be questioned. *Yarborough* v. *Bank of England*, 16 East, 6 ; *Smith* v. *Birmingham &c. Gas Light Co.*, 1 Adolph. & Ellis, 526. And there seems no sufficient ground for a distinction in this respect, between cities and towns and other corporations. *Clark* v. *Washington*, 12 Wheaton, 40 ; *Baker* v. *Boston*, 12 Pick. 184.

Whether a particular act, operating injuriously to an individual, was authorized by the city, by any previous delegation of power, general or special, or by any subsequent adoption and ratification of particular acts, is a question of fact, to be left to a jury, to be decided by all the evidence in the case. As a general rule, the corporation is not responsible for the unauthorized and unlawful acts of its officers, though done *colore officii ;* it must further appear, that they were expressly authorized to do the acts, by the city government, or that they

were done *bonâ fide* in pursuance of a general authority to act for the city, on the subject to which they relate ; or that, in either case, the act was adopted and ratified by the corporation. As the evidence was not submitted to the jury in the present case, and the fact does not appear, but it is only found that the acts complained of, were done by officers of the city, the Court are of opinion that the verdict must be set aside and a new trial granted.